STATE of Minnesota, Respondent,

v.

**Brian Lewis ESSEX, Appellant.**

No. A12–2268.

Court of Appeals of Minnesota.

Nov. 4, 2013.

806

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN; and Amy R. Brosnahan, Kanabec County Attorney, Mora, MN, for respondent.

Brockton D. Hunter, Ryan Christian Else, Brockton D. Hunter P.A., Minneapolis, MN, for appellant.

Considered and decided by CLEARY, Presiding Judge; KIRK, Judge; and SMITH, Judge.

## OPINION

CLEARY, Judge.

Following a jury trial, appellant was convicted of attempted second-degree assault, carrying a pistol in a public place while under the influence of alcohol, and disorderly conduct. Appellant challenges his attempted-assault and carrying-a-pistol convictions, arguing that the evidence presented at trial was insufficient to support

those convictions. Appellant also challenges his sentence for attempted assault, arguing that the sentence was based on an aggravating factor found by the district court, in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We affirm.

## FACTS

On the night of July 23, 2011, A.S. was working as a bartender at a bar and restaurant and was serving alcoholic drinks to appellant Brian Lewis Essex, a frequent patron of the establishment. A.S. testified that appellant became loud and boisterous around 10:30 p.m., that she had served him at least five strong alcoholic drinks throughout the night and "thought he was intoxicated," and that she handed him his bill and told him to leave. According to A.S., appellant refused to pay the bill and "stormed out the door." A.S. testified that appellant then banged on the large front window, pointed at her head as if he had a gun, and said "boom boom" before leaving. Appellant did not have a firearm with him at the time.

According to A.S.'s version of subsequent events, around 1:30 a.m. on July 24, she and the owner's son, D.V., were cleaning and preparing to close the establishment when appellant returned and began yelling and banging on a window. A.S. testified that she was typically alone at the establishment at this time of the night and that appellant would have known this. D.V. said that he would "take care of this" and went outside. A.S. then saw that appellant was wearing a holster, that the holster was unsnapped, and that a firearm was partway out of the holster. She yelled that appellant had a gun. A.S. testified that appellant then "reach[ed] down to grab" the firearm and that D.V. ran to him and grabbed his arms. During the ensuing physical altercation, A.S. was able to grab the firearm and take it inside the establishment.

Following the altercation, D.V. put appellant on the all-terrain vehicle that appellant had arrived on and told him to go home. According to A.S., appellant was "very intoxicated and just fell off" the vehicle. Appellant then called 911, reporting that he had been beaten and that his firearm had been taken. When sheriff's deputies arrived on the scene, they detected a strong odor of alcohol coming from appellant and noticed that his speech was slurred, his eyes were bloodshot and watery, and his balance was poor. Appellant refused a request that he submit to a preliminary breath test, but at least one of the deputies believed that he was intoxicated. A deputy retrieved the firearm, which was loaded with ammunition.

Appellant was transported to a hospital for medical treatment. An emergency room physician discovered that appellant had suffered a skull fracture and had lost consciousness for an indeterminate amount of time. The physician determined that appellant "was not able to make decisions" due to the head injury. The physician noted that appellant "was exhibiting behaviors suggestive of recent use of controlled substances, alcohol or the like," that he smelled of alcohol, and that his speech was slurred. The physician concluded that appellant was intoxicated. Appellant did not submit to implied-consent chemical testing; he claimed that he was not mentally competent to make decisions due to his head injury.

Appellant was subsequently charged with several crimes. A jury found him guilty of attempted second-degree assault, carrying a pistol in a public place while under the influence of alcohol, and disorderly conduct, and found him not guilty of fifth-degree assault and refusal to submit to a chemical test. Appellant received an

executed sentence of 12 months and 1 day for the attempted-assault conviction, and sentences of 90 days for the carrying-a-pistol and disorderly-conduct convictions, with all sentences to be served concurrently. This appeal follows.

## ISSUES

I. Was the evidence presented at trial sufficient to support appellant's conviction of attempted second-degree assault?

II. Was the evidence presented at trial sufficient to support appellant's conviction of carrying a pistol in a public place while under the influence of alcohol?

III. Did the district court commit reversible error by sentencing appellant for attempted second-degree assault based on a judicial finding of an aggravating factor?

## ANALYSIS

### I. The evidence presented at trial was sufficient to support appellant's conviction of attempted second-degree assault.

Appellant argues that there was insufficient evidence to sustain his conviction of attempted second-degree assault. When the sufficiency of the evidence is challenged, appellate review "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The appellate court must assume that the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). The verdict should not be disturbed "if the jury, acting with due

regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [the] defendant was proven guilty of the offense charged." *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn.2004) (quotation omitted).

"Whoever assaults another with a dangerous weapon" may be convicted of second-degree assault. Minn.Stat. § 609.222, subd. 1 (2010). "Assault" is defined as either "an act done with intent to cause fear in another of immediate bodily harm or death" or "the intentional infliction of or attempt to inflict bodily harm upon another." Minn.Stat. § 609.02, subd. 10 (2010). "Whoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime. . . ." Minn. Stat. § 609.17, subd. 1 (2010). "With intent to" means that "the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn.Stat. § 609.02, subd. 9(4) (2010).

### A. Intent to commit second-degree assault.

In order to sustain appellant's conviction of attempted second-degree assault, there must be sufficient evidence that appellant had intent to commit second-degree assault. *See* Minn.Stat. § 609.17, subd. 1. Because intent is a state of mind, it is "generally proved circumstantially [ ] by drawing inferences from the defendant's words and actions in light of the totality of the circumstances." *State v. Cooper*, 561 N.W.2d 175, 179 (Minn.1997) (stating further that "the jury may infer that a person intends the natural and probable consequences of his actions"). When reviewing a conviction based on circumstantial evidence, we must

first "identify the circumstances proved" by the evidence, deferring to "the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the [s]tate." *State v. Andersen,* 784 N.W.2d 320, 329 (Minn. 2010) (quotations omitted). We must next "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved," and "all [of] the circumstances proved must be consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt." *Id.* (quotations omitted).

The evidence that the state presented at trial proved that appellant became angry after A.S. told him to leave the establishment and that he banged on the window, pointed at her head as if he had a gun, and said "boom boom." Appellant then left, retrieved a loaded firearm, and returned to the establishment at a time he knew that A.S. would usually be alone. He began yelling and banging on the window. When A.S. noticed appellant's holster and firearm and alerted D.V., appellant reached down to grab the firearm. He was prevented from reaching it by D.V., who ran to him and grabbed his arms, and by A.S., who got ahold of the firearm and removed it.

■ Considering the totality of the circumstances proved, the only reasonable inference to be drawn is that appellant intended to commit second-degree assault either by using the firearm to cause fear in another of immediate bodily harm or death or by using the firearm to actually inflict bodily harm upon another. Appellant has offered a variety of explanations for carrying the firearm and has suggested that he may have been reaching down to secure the firearm in the holster rather than reaching down to grab it. Given the totality of the events that occurred on that night, the alternative inferences that appellant has proposed are not reasonable.

**B. An act that is a substantial step toward the commission of second-degree assault.**

■ In order to sustain appellant's conviction of attempted second-degree assault, there must also be sufficient evidence that appellant committed an act that was a substantial step toward, and more than preparation for, the commission of second-degree assault. *See* Minn.Stat. § 609.17, subd. 1. The evidence presented at trial was sufficient to permit the jury to conclude that appellant took a substantial step toward commission of second-degree assault when he retrieved a loaded firearm, returned to the establishment, and reached down to grab the firearm.

■ Appellant contends that there was insufficient evidence of intent to commit second-degree assault and of a substantial step toward the commission of second-degree assault because he did not actually point or brandish the firearm. He cites to cases where this court has held that the evidence was sufficient to sustain convictions of *completed* second-degree assault when the defendants brandished dangerous weapons. *See, e.g., State v. Kastner,* 429 N.W.2d 274, 275–76 (Minn.App.1988), *review denied* (Minn. Nov. 16, 1988); *State v. Patton,* 414 N.W.2d 572, 574 (Minn.App. 1987). If appellant had pointed or brandished the firearm, he may have been charged with and convicted of second-degree assault, rather than *attempted* second-degree assault. Appellant has identified no authority indicating that evidence of brandishing a dangerous weapon is necessary to sustain a conviction of attempted second-degree assault, and we decline to adopt his contention. The evidence presented at trial was sufficient to support

appellant's conviction of attempted second-degree assault.

## II. The evidence presented at trial was sufficient to support appellant's conviction of carrying a pistol in a public place while under the influence of alcohol.

"A person may not carry a pistol on or about the person's clothes or person in a public place ... when the person is under the influence of alcohol." Minn. Stat. § 624.7142, subd. 1(4) (2010). Appellant argues that there was insufficient evidence that he was under the influence of alcohol to sustain his conviction under this statute. "Ordinarily, the state proves [that a person is under the influence of alcohol] by showing the amount of liquor consumed (either by witnesses or chemical tests), or by evidence of outward manifestations of intoxication, or by a combination of both methods." *State, City of Eagan v. Elmourabit*, 373 N.W.2d 290, 293 (Minn. 1985).

A.S. testified that she had served appellant at least five strong alcoholic drinks on the night of July 23 before he became loud and boisterous and she told him to leave. She stated that she "thought he was intoxicated." She also testified that, following the physical altercation, appellant was "very intoxicated and just fell off" his vehicle. A sheriff's deputy testified that appellant smelled of alcohol and that his speech was slurred, his eyes were bloodshot and watery, and his balance was poor. The deputy affirmed that these are "typical observations of intoxication" and testified that he believed that appellant was intoxicated. The emergency room physician testified that appellant "was exhibiting behaviors suggestive of recent use of controlled substances, alcohol or the like," that he smelled of alcohol, and that his speech was slurred. The physi-

cian concluded that appellant was intoxicated. We must assume that the jury believed these witnesses. *See Moore*, 438 N.W.2d at 108.

Appellant contends that his behavior, slurred speech, bloodshot and watery eyes, and poor balance can be explained by his head injury rather than by the consumption of alcohol. But no evidence or testimony was presented at trial to indicate that the symptoms that he displayed can be caused by a skull fracture. Appellant also contends that the smell of alcohol can be explained by the use of mouthwash. But no evidence or testimony was presented to indicate that alcohol and mouthwash have similar odors and, in fact, when asked whether it is possible for a person to smell of alcohol if he or she has used mouthwash, a sheriff's deputy testified that he did not "believe that mouthwash is the same as an odor of an alcoholic beverage." The evidence presented at trial was sufficient to support appellant's conviction of carrying a pistol in a public place while under the influence of alcohol.

## III. The district court did not commit reversible error by imposing an executed sentence for attempted second-degree assault based on an aggravating factor.

Appellant argues that the district court enhanced his sentence for attempted second-degree assault from the presumptive sentence under the Minnesota Sentencing Guidelines based on an aggravating factor that was not found by the jury, in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. Evaluation of an alleged *Blakely* error presents a constitutional question that is reviewed de novo. *State v. Dettman*, 719 N.W.2d 644, 648–49 (Minn.2006).

The crime of second-degree assault has a severity level of six under the sentencing

guidelines, and for a person with a criminal history score of zero, as appellant had, the presumptive sentence according to the sentencing guidelines grid is 21 months stayed. *See* Minn. Sent. Guidelines IV & V (2010).

> For persons convicted of attempted offenses ... the presumptive sentence is determined by locating the Sentencing Guidelines Grids cell defined by the offender's criminal history score and the severity level of the completed or intended offense ... and dividing the duration contained therein by two, but such sentence shall not be less than one year and one day ....

*Id.,* II.G (2010). Appellant received a sentence of 12 months and 1 day for his conviction of attempted second-degree assault.

> [A]ny defendant convicted of an offense listed in subdivision 9 in which the defendant or an accomplice, at the time of the offense, had in possession or used, whether by brandishing, displaying, threatening with, or otherwise employing, a firearm, shall be committed to the commissioner of corrections for not less than three years, nor more than the maximum sentence provided by law.

Minn.Stat. § 609.11, subd. 5(a) (2010). Attempted second-degree assault is listed as one of the offenses to which subdivision 5(a) applies. *Id.,* subd. 9 (2010).

> The question of whether the defendant or an accomplice, at the time of commission of an offense listed in subdivision 9, used a firearm or other dangerous weapon or had in possession a firearm shall be determined by the fact finder at the time of a verdict or finding of guilt at trial ....

*Id.,* subd. 7 (2010).

When an offender has been convicted of an offense with a mandatory minimum sentence under Minn.Stat. § 609.11, which would otherwise be a presumptive stayed sentence under the sentencing guidelines, the court on its own motion or on the motion of the prosecutor may sentence without regard to the mandatory minimum sentence. *The presumptive disposition, however, is commitment to the Commissioner.*

Minn. Sent. Guidelines II.E (2010) (emphasis added).[1]

 Appellant contends that the district court imposed an executed sentence, rather than a stayed sentence, because it found that he "had in possession or used" a firearm at the time that the attempted assault was committed. He argues that the district court's failure to submit a question on this aggravating factor to the jury violated *Blakely* and Minn. Stat. § 609.11, subd. 7. An upward dispositional departure from the presumptive guideline sentence based on a finding made by the district court violates the Sixth Amendment right to a trial by jury. *State v. Allen,* 706 N.W.2d 40, 45–47 (Minn.2005) (citing *Blakely,* 542 U.S. at 303, 124 S.Ct. at 2537). An upward sentencing departure pursuant to the provisions of Minn.Stat. § 609.11 (2010), may not be based on judicial fact-finding. *State v. Barker,* 705 N.W.2d 768, 773 (Minn. 2005).

 A special interrogatory should have been submitted to the jury before appellant was sentenced based on the ag-

---

1. We note that the district court may have been within its discretion to impose the mandatory minimum three-year sentence under Minn.Stat. § 609.11, subd. 5(a). Because the state does not challenge the duration of appellant's sentence, that issue is not before this court.

gravating factor at issue. But *Blakely* errors are subject to harmless-error analysis. *State v. Chauvin*, 723 N.W.2d 20, 30 (Minn.2006). A *Blakely* error is harmless if the reviewing court can "say with certainty that a jury would have found the aggravating factors used to enhance [the defendant's] sentence had those factors been submitted to a jury in compliance with *Blakely*." *Dettman*, 719 N.W.2d at 655. The district court's failure to submit a special interrogatory regarding the aggravating factor to the jury was harmless error. All of the evidence presented at trial, including appellant's own testimony, revealed that he was wearing a holster holding a firearm upon his return to the establishment, during the events leading up to the physical altercation, and during the beginning of the physical altercation. The jury found appellant guilty of attempted assault with a dangerous weapon and carrying a pistol in a public place while under the influence of alcohol. Had they been specifically asked, their guilty verdict reflects that the jurors would have found that appellant had a firearm in his possession at the time that the attempted assault was committed. The district court did not commit reversible error by imposing an executed sentence for attempted second-degree assault.

## DECISION

Because there was sufficient evidence to permit the jury to conclude that appellant had intent to commit second-degree assault, took action that was a substantial step toward the commission of second-degree assault, and was under the influence of alcohol, there was sufficient evidence presented at trial to support appellant's convictions of attempted second-degree assault and carrying a pistol in a public place while under the influence of alcohol. Because the jury would have found the aggravating factor used to enhance appellant's sentence had a special interrogatory been used, the district court did not commit reversible error by imposing an executed sentence for attempted second-degree assault.

**Affirmed.**