*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0732**

State of Minnesota,
Respondent,

vs.

Dylan Thomas Peterson,
Appellant.

**Filed May 6, 2024**
**Affirmed**
**Larson, Judge**

St. Louis County District Court
File Nos. 69VI-CR-21-585; 69HI-CR-22-78

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kimberly J. Maki, St. Louis County Attorney, Tyler J. Kenefick, Assistant County Attorney, Hibbing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Kathryn J. Lockwood, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larson, Presiding Judge; Reyes, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

Appellant Dylan Thomas Peterson appeals his sentences for two second-degree-assault convictions under Minn. Stat. § 609.222, subd. 2 (2020). Peterson argues the district court abused its discretion when it imposed (1) upward durational departures for

both sentences and (2) excessive and unreasonable sentences. Peterson raises additional arguments in his pro se supplemental brief. We affirm.

**FACTS**

In December 2022, Peterson pleaded guilty to two counts of second-degree assault under Minn. Stat. § 609.222, subd. 2. The first assault occurred in Eveleth, Minnesota, in June 2021 (the Eveleth assault). The second assault occurred in Hibbing, Minnesota, in January 2022 (the Hibbing assault). During his plea hearing, Peterson confirmed that for both assaults, he signed plea and aggravated-sentence petitions. In those documents, Peterson acknowledged he was pleading guilty, understood the state would seek an aggravated sentence, and expressly waived his "right to a trial on the facts in support of an aggravated sentence."

At the plea hearing, Peterson first pleaded guilty to the Eveleth assault. In response to questions from his counsel and the state, Peterson agreed to the following facts: on June 4, 2021, he was at a pizza restaurant in Eveleth; he encountered the victim and stabbed him in the leg with a knife; the knife punctured the victim's skin and broke a bone; and the victim's wounds constituted "substantial bodily harm."

The state further proffered a factual basis to support a sentence enhancement for the Eveleth assault on the ground that Peterson met the dangerous-offender standard under Minn. Stat. § 609.1095, subd. 2 (2020). In response to questions from the state, Peterson agreed that he: was "18 years old or older" at the time of the offense; had six prior convictions, including a 2015 conviction for aiding and abetting first-degree aggravated robbery, a 2015 conviction for second-degree assault, a 2015 conviction for first-degree

2

aggravated robbery, a 2013 conviction for fifth-degree assault, a 2012 conviction for second-degree witness tampering, and a 2012 conviction for fifth-degree assault; and was incarcerated from July 2015 to January 2019. The district court found "a sufficient factual basis" for the plea after Peterson attested to the facts for the Eveleth assault and the sentence enhancement.

Peterson next pleaded guilty to the Hibbing assault. In response to questions from his counsel and the state, Peterson agreed that: he stabbed the victim in the leg with a knife; he did not act in self-defense or in defense of others; the victim was hospitalized because of the wound; and the victim was "placed in a wheelchair and had . . . substantial cuts to his arms."

The state then established a factual basis to support a sentence enhancement based on the Hibbing assault occurring in the victim's zone of privacy. *See* Minn. Sent'g Guidelines 2.D.3.b(14) (Supp. 2021). In response to questions from the state, Peterson agreed that: earlier in the day, he had permission to enter the victim's home "to remove some property"; the stabbing occurred after he finished removing the property; and, at the time of the stabbing, he "did not have permission to come back in[to] [the victim's] house and stab him." The district court again found "a sufficient factual basis" for the plea after Peterson attested to the facts for the Hibbing assault and the sentence enhancement.

Prior to the sentencing hearing, the district court received a presentence investigation report (PSI). For the Eveleth assault, the PSI recommended a presumptive 69-month prison term. For the Hibbing assault, the PSI recommended a presumptive 75-month prison term.

In February 2023, the district court held a sentencing hearing. At the hearing, Peterson requested the presumptive sentences for both convictions. The state requested aggravated sentences of 120 months in prison for both convictions. The district court granted the state's request and sentenced Peterson to two concurrent 120-month prison terms. For the Eveleth assault, the district court found that Peterson had "two or more prior convictions for violent crimes," and therefore, was "a danger to public safety based on his past criminal behavior." *See* Minn. Stat. § 609.1095, subd. 2. For the Hibbing assault, the district court found that Peterson had "stabbed the victim in a zone of privacy." *See* Minn. Sent'g Guidelines 2.D.3.b(14). On these bases, the district court determined that the state presented sufficient evidence for the upward durational departures.

This appeal follows.

**DECISION**

Peterson challenges the district court's decision to sentence him to two concurrent 120-month prison terms. We review a district court's decision to depart from the Minnesota Sentencing Guidelines for an abuse of discretion. *State v. Edwards*, 774 N.W.2d 596, 601 (Minn. 2009). We will affirm the district court's departure if it was "legally permissible and factually supported in the record." *Id.*

Peterson makes the following arguments. Regarding the Eveleth assault, Peterson argues the district court abused its discretion when it determined that he met the dangerous-offender standard in Minn. Stat. § 609.1095, subd. 2. With respect to the Hibbing assault, Peterson asserts the district court abused its discretion when it determined Peterson committed the offense in the victim's zone of privacy. *See* Minn. Sent'g Guidelines

4

2.D.3.b(14). For both convictions, Peterson argues the sentences for 120-month prison terms were excessive and unreasonable. And in his pro se supplemental brief, Peterson raises two constitutional challenges to his sentences. We address Peterson's arguments in turn below.

**I.**

For the Eveleth assault, Peterson argues the district court abused its discretion when it imposed an upward durational departure on the basis that he meets the statutory criteria to be sentenced as a dangerous offender under Minn. Stat. § 609.1095, subd. 2. The statute provides:

> Whenever a person is convicted of a violent crime that is a felony, . . . the judge may impose an aggravated durational departure from the presumptive imprisonment sentence up to the statutory maximum sentence if the offender was at least 18 years old at the time the felony was committed, and:
>
> (1)     the court determines on the record at the time of sentencing that the offender has two or more prior convictions for violent crimes; and
>
> (2)     the fact finder determines that the offender is a danger to public safety.

Minn. Stat. § 609.1095, subd. 2.

Peterson first contends that the district court abused its discretion because it needed to find substantial and compelling circumstances to depart from the presumptive sentence. We disagree.

Generally, to depart from the presumptive guidelines range, the offense must involve "substantial and compelling circumstances." *State v. Jones*, 745 N.W.2d 845, 848

(Minn. 2008). But the supreme court has held that departures under Minn. Stat. § 609.1095, subd. 2 "are justified on the basis of the offender's criminal history, not on aggravating factors," and the statute allows durational departures that the sentencing guidelines would not otherwise permit. *Neal v. State*, 658 N.W.2d 536, 545 (Minn. 2003). "In addition, the terms of the statute do not limit the length of departures." *Id.* Thus, the district court need not find substantial and compelling reasons to justify a departure when the statute's requirements have been met. *Id.* at 546. Because the statute allows the district court to depart from the presumptive guidelines range based only on the statutory criteria, the district court did not abuse its discretion when it failed to find substantial and compelling circumstances to impose the upward durational departure. *See id.*; Minn. Stat. § 609.1095, subd. 2.

Second, Peterson argues the district court failed to make adequate findings to support its decision that he is "a danger to public safety." *See* Minn. Stat. § 609.1095, subd. 2(2). To determine whether "the offender is a danger to public safety," the district court may consider, among other factors, "the offender's past criminal behavior, such as the offender's high frequency rate of criminal activity" or "long involvement in criminal activity." *Id.*

Peterson contends the district court needed to analyze expressly the "public safety" factors set forth in the statute, specifically the factors related to the frequency and duration of his past criminal conduct. But in *State v. Thomas*, we concluded that to comply with the statute the district court need only "determine[] on the record at the time of sentencing that the offender has two or more prior convictions for violent crime." 890 N.W.2d 413, 421-

6

22 (Minn. App. 2017) (alteration in original) (quoting Minn. Stat. § 609.1095, subd. 2(1)), *rev. denied* (Minn. Mar. 28, 2017).

Here, the district court's decision to depart complied with *Thomas*. During the sentencing hearing, the district court determined that Peterson had "two or more prior convictions for violent crimes," and he "is a danger to public safety based on his past criminal behavior." Moreover, the record supports the district court's decision. At the plea hearing, Peterson admitted to multiple prior convictions for violent crimes. Those convictions occurred in 2012, 2013, and 2015, before he went to prison from July 2015 until January 2019. And the record illustrates that, upon his release from prison, he resumed his criminal conduct in 2021 and 2022. Although more specific public-safety findings would have been preferable, the district court did not abuse its discretion when it imposed an upward durational departure on the basis that Peterson meets the statutory criteria for sentencing as a dangerous offender under Minn. Stat. § 609.1095, subd. 2.

**II.**

For the Hibbing assault, Peterson argues that the district court abused its discretion when it imposed an upward durational departure on the basis that he committed the crime in the victim's zone of privacy.

The guidelines prescribe sentencing ranges that are presumed appropriate. Minn. Sent'g Guidelines 1.A.6, 2.D.1 (Supp. 2021). But the guidelines allow for departures from the presumptive guidelines range in certain circumstances. *See id.* The guidelines include a nonexclusive list of aggravating factors meant to describe cases in which the crime is more serious than the typically charged offense. Minn. Sent'g Guidelines 2.D.3.b,

7

cmt. 2.D.301 (Supp. 2021); *State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984). "[A] single aggravating factor is sufficient to uphold an upward departure." *State v. Weaver*, 796 N.W.2d 561, 571 (Minn. App. 2011) (quotation omitted), *rev. denied* (Minn. July 19, 2011).

The guidelines list as an aggravating factor an offense committed "in a location in which the victim had an expectation of privacy." Minn. Sent'g Guidelines 2.D.3.b(14); Minn. Stat. § 244.10, subd. 5a(a)(14) (2020). The zone-of-privacy factor encompasses a victim's home and includes a defendant causing "a continuing fear of harm in the home" or "a deliberate invasion" of the home. *State v. Parker*, 901 N.W.2d 917, 928-29 (Minn. 2017).

Peterson argues the district court abused its discretion when it applied the zone-of-privacy factor because the state failed to establish that the victim did not invite Peterson into the home at the time the stabbing occurred. To support this argument, Peterson points to the following testimony at the plea hearing:

> STATE: Okay. So, would it be fair to say you did not have permission to come back in[to] [the victim's] house and stab [the victim] at that point?
>
> PETERSON: Yes.

According to Peterson, he only admitted that he did not have permission to enter *and* stab the victim, not that he did not have permission to enter the home. We are not persuaded.

Reviewing Peterson's statement in context, we conclude that he admitted the victim did not give him permission to enter the home at the time of the stabbing. Prior to making the above statement, Peterson explained that earlier in the day the victim allowed Peterson

8

to enter the home "to remove some property." Peterson agreed that he left "and then c[a]me back," and that the stabbing occurred after he was "done moving things." The state followed up, asking whether it would be fair to say that he "did not have permission to come back in [the] house and stab [the victim] at that point," and Peterson replied, "Yes." In this context, we conclude that Peterson admitted he did not have permission to enter the home when he stabbed the victim.

Peterson also argues the district court abused its discretion when it applied the zone-of-privacy factor because the state failed to demonstrate the offense involved substantial and compelling circumstances justifying the departure. As set forth above, to depart from the presumptive guidelines range, the offense generally must involve "substantial and compelling circumstances." *Jones*, 745 N.W.2d at 848. "Substantial and compelling circumstances are those demonstrating that the defendant's conduct . . . was *significantly* more or less serious than that typically involved in the commission of the crime in question." *Id.* (quotation omitted). Here, Peterson argues the state failed to show that his conduct was "significantly more serious" than a typical second-degree assault. We are not persuaded.

It is well-established that "[c]ommitting a crime within an area where the victim has an expectation of privacy" alone can make an offense "significantly more serious than a typical crime." *Parker*, 901 N.W.2d at 928 (quotation omitted). And second-degree assaults often occur outside the victim's home, illustrating that this crime is not "typical." *See, e.g.*, *State v. Fox*, 396 N.W.2d 862, 863 (Minn. App. 1986) (second-degree assault in a truck along a highway), *rev. denied* (Minn. Jan. 16, 1987); *State v. Oates*, 611 N.W.2d

580, 582-83 (Minn. App. 2000) (second-degree assault in a nightclub), *rev. denied* (Minn. Aug. 22, 2000); *State v. Essex*, 838 N.W.2d 805, 807-08 (Minn. App. 2013) (attempted second-degree assault at a bar), *rev. denied* (Minn. Jan. 21, 2014). Thus, we conclude the district court did not abuse its discretion because substantial and compelling circumstances justified the departure.

For these reasons, we conclude the district court did not abuse its discretion when it imposed an upward durational departure on the basis that Peterson committed the Hibbing assault in the victim's zone of privacy.

**III.**

Peterson argues that the district court's concurrent 120-month prison terms for both assaults are "unreasonable and excessive because [they] unduly exaggerate[] the criminality of his conduct." On appeal, we "may review the sentence imposed . . . to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of fact issued by the district court." Minn. Stat. § 244.11, subd. 2(b) (2020). To evaluate whether a sentence exaggerates a defendant's criminality we "may consider . . . comparable sentences in departure cases to determine if a sentence is unjustifiably disparate." *Vickla v. State*, 793 N.W.2d 265, 270 (Minn. 2011). "[G]enerally in a case in which an upward departure in sentence length is justified, the upper limit will be double the presumptive sentence length." *State v. Evans*, 311 N.W.2d 481, 483 (Minn. 1981) (emphasis omitted). But district courts should not "automatically double the presumptive length in all cases" and "we will not automatically approve all departures of this magnitude." *Id.*

10

We conclude the district court did not impose unreasonable or excessive sentences in this case. For the Eveleth assault, Peterson faced a presumptive 69-month prison term and, as set forth above, the district court appropriately determined that Peterson met the dangerous-offender statutory criteria under Minn. Stat. § 609.1095, subd. 2. And for the Hibbing assault, Peterson faced a presumptive 75-month prison term and, as set forth above, the district court appropriately found Peterson committed the offense in the victim's zone of privacy. *See* Minn. Sent'g Guidelines 2.D.3.b(14). In departing upward, the district court imposed a sentence less than double the presumptive sentence. *See Evans*, 311 N.W.2d at 483. And Peterson's sentences are consistent with sentences received by other offenders who committed second-degree assault with similar aggravating circumstances. *See, e.g.*, *State v. Castillo*, No. A14-1647, 2015 WL 4877699, at *3 (Minn. App. Aug. 17, 2015) (affirming second-degree assault sentence with dangerous-offender enhancement that was "slightly more than twice the middle of the sentencing range and slightly less than twice the high end of the range"), *rev. denied* (Minn. Nov. 17, 2015); *Hinton v. State*, No. A05-1716, 2006 WL 2053131, at *1-2 (Minn. App. July 25, 2006) (approving upward durational departure for second-degree assault where defendant invaded victim's zone of privacy).[1]

Therefore, the district court did not impose unreasonable or excessive sentences.

---

[1] Nonprecedential opinions are not binding authority but may be cited as persuasive authority. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

**IV.**

Peterson also filed a pro se supplemental brief. He raises two arguments in addition to the issues addressed above. We address those arguments in turn.

Peterson first argues the district court violated the double-jeopardy clause in the U.S. and Minnesota Constitutions when it determined he met the dangerous-offender statutory criteria under Minn. Stat § 609.1095, subd. 2. *See* U.S. Const. amend. V; Minn. Const. art. I, § 7. However, Peterson does not point to legal authority that equates an upward sentencing departure with punishing a defendant twice for the same offense. Because Peterson failed to cite any legal authority to support his argument, he inadequately briefed the issue and forfeited it on appeal. *See In re Civil Commitment of Kropp*, 895 N.W.2d 647, 653 (Minn. App. 2017), *rev. denied* (Minn. June 20, 2017); *see also State v. Beaulieu*, 859 N.W.2d 275, 278 n.3 (Minn. 2015) (defining "forfeiture" as "a failure to make a timely assertion of a right").

Second, Peterson argues the upward durational departures violated the Sixth Amendment of the U.S. Constitution under *Blakely v. Washington*, 542 U.S. 296 (2004) because the aggravating factors were "based on judicially determined facts that were neither determined by a jury [n]or admitted by defendant during his plea hearing." We disagree. Under *Blakely*, "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Id.* at 310. The record shows Peterson signed two plea petitions in which he expressly waived his "right to a trial on the facts in support of an

12

aggravated sentence."  And at his plea hearing, Peterson stipulated to the facts supporting the aggravated sentences.

For all the reasons set forth above, we affirm Peterson's sentences.

**Affirmed.**